Filed 5/28/25  Marriage of Williams CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re the Marriage of Yolanda and Damon Williams. | |
| YOLANDA WILLIAMS,<br><br>Respondent<br><br>v.<br><br>DAMON WILLIAMS, JR.,<br><br>Appellant,<br><br>SAN FRANCISCO EMPLOYEES RETIREMENT SYSTEM,<br><br>Respondent. | A170306<br><br>(Contra Costa County Super. Ct. No. D05-06013) |

### MEMORANDUM OPINION[1]

In January 2007, a judgment was filed terminating the marriage of Damon Williams, Jr. and Yolanda Williams.[2]  In July

---

[1] We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1. (See also *People v. Garcia* (2002) 97 Cal.App.4th 847, 853–855.)

[2] We refer to the parties by their first names to avoid confusion.  No disrespect is intended.  (See *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, fn. 6.)

2008, a Qualified Domestic Relations Order (QDRO) was entered in these proceedings providing for the division of Yolanda's community property interest in Damon's retirement benefits with the San Francisco Employees' Retirement System (SFERS). Under the QDRO, Yolanda's benefits are to be determined by various future employment events and related elections.

Yolanda died in August 2008, without having made any elections regarding her community property interest in Damon's retirement benefits. Under the terms of the 2008 order, "if Non-member has not yet made any election, and Non-member predeceases Member, Non-member's Community Property Interest in Member's monthly retirement allowance shall be paid to Non-member's estate for as long as a monthly retirement allowance is payable to Member."

In April 2021, Damon retired, at which time SFERS began withholding 13.08 percent of his monthly disbursement to account for Yolanda's community property interest. SFERS informed Damon that the amount being withheld would be paid to Yolanda's estate.

On June 2, 2023, Damon obtained an order from the trial court finding that he had "satisfied his community property obligation to the estate of Ms. Yolanda Williams" and terminating his obligations under the QDRO (hereafter "Termination Order"). Shortly thereafter, Damon wrote to SFERS requesting that it immediately stop withholding any amounts from his monthly benefits and issue a refund of any overpayment of benefits to

Yolanda's estate. A copy of the Termination Order was attached to his letter.

On June 30, SFERS filed a motion to set aside the Termination Order on the ground that Yolanda's estate was still entitled to a share of Damon's retirement benefits under the QDRO.

On March 4, 2024, after SFERS was joined in the proceeding, the trial court set aside the Termination Order. The court found that Damon had failed to provide a legal basis to terminate the QDRO and that SFERS should continue to withhold and distribute the retirement allowance to Yolanda's estate under the terms of that order.

Damon, appearing in propria persona, timely filed a notice of appeal challenging the order setting aside the Termination Order.[3]

## DISCUSSION

Damon contends the trial court erred in setting aside its 2023 order because the evidence proves that his community property obligations have been paid in full. Damon argues that, because Yolanda's community property interest was valued at $26,389.61 at the time of separation and a total of $32,796.66 had been withheld from his benefit payments as of the time of the 2023 order, Yolanda's estate had been fully paid and he was owed

_____

[3] Damon's opening brief raises several arguments regarding matters not presently before this court, including several arguments challenging the underlying validity of the QDRO, rather than its satisfaction. Those arguments will not be considered.

a refund. Yolanda's community property interest in Damon's retirement benefits, however, was not merely a lump sum amount determined at the time of separation. While the 2008 order includes various conditions under which Yolanda might have been entitled, had she not passed away, to elect for the return of her "contributions to the Retirement Fund," as set forth above, the order plainly entitled her to receive lifetime benefits following Damon's retirement. Damon's arguments to the contrary are not persuasive.

Damon's argument that Yolanda's right to benefits terminated on her death is contrary to the terms of the QDRO. The QDRO provision to which he cites, section 6, subdivision (a), applies only "[i]n the event Non-member elects to receive a Lifetime Benefit."[4] As noted above, Yolanda did not make an election prior to her death. Accordingly, Yolanda's benefits are governed by subdivision (c) of that section, which, as set forth above, applies "if Non-member has not yet made any election, and Non-member predeceases Member."

Similarly, the 2008 order does not, as Damon suggests, provide that all of his retirement benefits are his sole property because of his industrial disability. Section 5 of the QDRO governs "Disability Retirement." Because Damon retired for disability after reaching age 50 and after having been credited with at least 5 years of service, his disability retirement is

---

[4] Under the terms of the order, Yolanda could have elected to receive her community property interest in Damon's monthly retirement allowance paid out over "Member's lifetime" or as a "Lifetime Benefit" based on her own lifespan.

4

governed by subdivision (b) of that section, which provides that "beginning on the latter of Member's effective date of retirement or the date Non-member elects to begin receiving benefits, the Plan shall pay Non-member her Community Property Interest in: (1) the monthly retirement allowance that Member would have received on the latter of these two dates had Member not retired for disability, and (2) any cost of living adjustments that Member may be granted. . . . After paying Non-member her Community Property interest, the Plan shall pay Member the balance of the monthly retirement allowance and the balance of any cost of living adjustments."

Damon's remaining cognizable arguments, all presented without citation to relevant legal authority, do not require extended discussion. The order setting aside the Termination Order does not reflect that the trial judge was biased.[5] And contrary to Damon's argument, SFERS properly moved to set aside the Termination Order under Family Code sections 2073 and 2074.

---

[5] In support of his claim, Damon quotes from two paragraphs in the court's order. The first explains that Damon requested the Termination Order because he "wished to discontinue the portion of the retirement allowance from his pension that had been allocated to his late spouse, Petitioner Yolanda Williams in order to increase his own retirement pension benefit" and that he "believed that her retirement benefit under the QDRO expired upon her death." The second reads, "Respondent is mistaken. . . . His position demonstrates an imperfect understanding of how the QDRO works via-a-vis the community property interest in the SFERS retirement benefit."

**DISPOSITION**

The order setting aside the Termination Order is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.